[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on November 11, 1973 in Simsbury, Connecticut. The defendant's birth name was Priscilla Ann Viets. At the time of the marriage, the plaintiff had one (1) child from his previous marriage, and the defendant had five (5) children from her prior marriage, which ended when her first husband died. The parties had actually met, and were dating when her first husband died. At that time, she was residing at the Oak Street, Winsted property, which is the subject of some dispute in this action.
As a result of their father's death, the five (5) children of the defendant were supported on Supplemental Security Income, and the original mortgage was paid.
Thereafter, the parties had three (3) children, Kristin, Erika, and Kara. Erika and Kara remain in their minority.
The parties stipulated at the outset of trial that their marriage had irretrievably broken down, and that they would be able to share joint custody of their minor children, who would live primarily with their mother, the defendant, with reasonable, liberal, and flexible visitation to the plaintiff father. The court enters a decree of dissolution and will ratify the agreement of joint custody.
The plaintiff took on the role of father to the defendant's children after the marriage, and he testified that for the first few years, CT Page 9832 the marriage was a happy one. There was no evidence that the plaintiff brought any assets into his marriage. He worked in the mason business then went into union construction work on buildings and road work. In the late 70's, he was injured for the first time on the job. He ripped the muscles of his master arm, his left, and received a 20% disability and between $11,000 and $13,000 in benefits.
He was injured again in a 14 foot fall, injuring his knee, ankle, and foot. He received $12,000 for that 15% disability to his leg.
These sums were added to the family finances according to plaintiff. The plaintiff claimed he would deposit his pay into a joint checking account from which the defendant would pay the bills. The defendant had her own checking account as well. The plaintiff testified that he would take between $50.00 and $100.00 per week for spending money.
The payment of bills created conflict for the parties, as did the disciplining of the defendant's children by her first marriage. The plaintiff complained that there was no communication, no love, no acceptance in his own home, where he maintained his own room for approximately eight to ten years prior to their separation.
The defendant claimed that she was left to care for the children, because the plaintiff was so involved in civic organizations and clubs. He admitted in his direct testimony that he belonged to the Elks, Lions Clubs, the American Red Cross, American Legion, Special Olympics, and the National Foundation of Elks, to which he contributed $1,300 at one time.
The defendant claimed that for the first nine (9) years of their marriage, death benefits paid all housing expenses for the family. The plaintiff paid the telephone bill and groceries. The defendant went back to work outside the home when those benefits ceased. She claimed that during the entire marriage, they had financial difficulties, and lost credit when plaintiff was in charge of the bill paying responsibilities.
The defendant claimed that the plaintiff routinely withdrew small amounts from ATM machines, causing bad check charges to compromise their bank balance. He left small bills unpaid for months, and generally ignored certain bills. The evidence produced in court with respect to submission of medical bills to his insurance company and his response to her concerning the 1990 IRS return which had to be refiled confirmed her claim that he was not capable, or would not be bothered, about the timely resolution of payment obligations.
Furthermore, the defendant claimed that he was now seeking to end CT Page 9833 the marriage because of his relationship with her sister. This had caused upheaval among family members, and great upset to the children. While these parties were leading a life of quiet desperation in their home, they seemed to muddle through until he became enamored with her sister.
At that time, plaintiff came home only to do laundry and to shower, and was moved out after a trip to Vermont with defendant's sister.
The defendant has managed to get her Associate's Degree from Mattatuck Community College in nursing, and is employed. The plaintiff did not pay child support until there was a court order, and only paid expenses for a short while after he left the family home.
The plaintiff claimed he made improvements to the home. The defendant demonstrated that plaintiff had commenced repairs, but left them unfinished and that they were eyesores.
In March of 1989, the parties went to the Money Store for a loan secured by the home to pay bills. The defendant claimed that since the plaintiff's name was never on the home, and because she did not know that he was borrowing as much as he did, he should be responsible for the home equity repayment. The plaintiff claims that six thousand ($6,000.00) dollars went into joint funds and that some funds were spent on her daughter's wedding.
It appears that the subject six thousand ($6,000.00) dollars was, in fact, deposited into the parties' joint checking account. However, there is no verification of what bills or expenses were covered by the total borrowing of twenty-six thousand ($26,000.00) dollars. Furthermore, the plaintiff's annuities were depleted from the beginning of the action in the amount of $13,000.00, still leaving him pension benefits, the value of which is listed in his financial affidavit.
It is clear that the plaintiff is not capable of protecting assets for his future or his childrens' future.
While he made significant financial contributions to the marital home and family, he also has compromised the emotional and financial health of this rather large extended family. While two minor children have remained in the marital home with their mother since the separation of the parties, they have been joined by two other adult children, one of whom is caring for a disabled youngster. It is obvious that the defendant has maintained the family unit, in tact, through several disruptions [disruptions], many of which were occasioned by accidents, but some occasioned by the plaintiff's determination of his priorities. CT Page 9834
Based upon a review of all of the evidence, the exhibits and the relevant statutory criteria, the following are the orders of the court.
1. The marital property at 262 Oak Street in Winsted shall remain the property of the defendant.
2. The plaintiff shall pay the "Money Store" mortgage and hold the defendant harmless therefrom. To secure this hold harmless and other obligations hereunder, the plaintiff shall pay the defendant $1.00 per year as alimony. This debt as well as other obligations herein shall not be dischargeable in bankruptcy. The defendant shall cooperate in refinancing that remaining loan balance to reduce the interest rate but not to extend the date of maturity of the underlying loan to the Money Store.
3. The plaintiff shall pay child support in accordance with the guidelines and have the youngest child as a tax deduction so long as his child support payments, in total, exceed $100.00 per week.
4. The plaintiff shall maintain medical insurance for the minor children as available to him through his employment and the parties shall pay equally the unreimbursed health related expenses for the minor children. If plaintiff fails to submit the health related bills to his carrier and insurance refuses payment, he shall be solely responsible for the payment of that bill.
5. The plaintiff shall pay his and the children's unreimbursed medical expenses listed on Plaintiff's exhibit 7 because of his failure to submit those bills to the insurance carrier. The defendant shall pay her unreimbursed medical expenses.
6. The parties shall be responsible for the 1990 IRS tax liability commensurate with their incomes.
7. The defendant shall be responsible for any outstanding utility charges for the property at 262 Oak Street. She shall further be responsible for her own attorney's fees.
8. The plaintiff shall remove his personal belongings from the property at 262 Oak Street within twenty-one (21) days.
9. The plaintiff shall retain all right, title and interest to his pension benefits. No further assessment is made against his withdrawal of annuities pendente lite, but should be considered distribution of marital assets to him to a value of $13,000.00. CT Page 9835
Judgment shall enter consistent with this opinion.
DRANGINIS, J.